**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

ADRIANA ERNESTINA PEREZ MORENO,

Petitioner,

v.

Case No. 26-cv-00406-SRB

JIM C. ARNOTT, Warden, Greene County
Jail, et al.,

Respondents.

## ORDER

Before the Court is Petitioner Adriana Ernestina Perez Moreno's ("Petitioner") Verified Petition for Writ of Habeas Corpus (the "Petition"). (Doc. #1.) Petitioner also filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. (Doc. # 2). As set forth below, the Petition and Ex Parte Application are GRANTED.

Petitioner alleges that she is a Venezuelan national and entered the United States in October 2022. On October 7, 2022, Petitioner was granted humanitarian parole. Petitioner subsequently applied for and received a Temporary Protected Status ("TPS") under 8 U.S.C. 1254a.

On April 2, 2026, Petitioner was held after being stopped for speeding. Immigration and Customs Enforcement ("ICE") then took Petitioner into custody at Christian County Jail. The next day, United States Department of Homeland Security ("DHS") prepared an arrest warrant. Petitioner alleges her detention is unlawful and now requests her immediate release.

The Petition contains two counts: Count One—Violation of the Immigration and Nationality Act, 8 U.S.C. § 1254a; and Count Two—Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. In part, Count One alleges that Petitioner has

TSP status and that § 1254a(d)(4) states "[a]n alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." (Doc. #1, p. 10.) Count Two alleges in part that "Petitioner has a fundamental liberty interest in being free from arbitrary restraint, and that her "detention violates the Due Process Clause because it is not rationally related to any immigration purpose[.]" (Doc. #1, p. 11.)[1] Respondents timely filed a response, and Petitioner filed a reply.

Count II alleges that Petitioner's detention violates her due process rights. Respondents argue that to the extent Petitioner asserts a procedural due process claim, that claim fails. In particular, the Government argues that "by enacting Section 1225, Congress sought to eliminate the preferential treatment of aliens who violate the country's immigration laws by entering illegally and evading detection. . . . [Petitioner's] theory of procedural due process is incompatible with [case law]. [Petitioner] received (and is receiving) all the process due to her under Section 1225; in this case, that is due process of law. (Doc. #7, pp. 12-13) (quotation omitted).

In support of this argument, the Government cites, among other cases, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). In *Thuraissigiam*, the Supreme Court rejected a noncitizen's argument that his expedited removal proceeding violated due process, and held that the noncitizen "ha[d] only those rights *regarding admission* that Congress has provided by" § 1225. *Id.* (emphasis supplied).

Upon review, the Court rejects Respondents' arguments. "As other courts addressing similar arguments have noted, *Thuraissigiam* dealt with a due process challenge to the sufficiency of § 1225's process for expedited removal—not with a challenge to prolonged mandatory detention." *Alvarez v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at * 4 (S.D. Tex. Feb. 25,

---

[1] Based on the rulings below, the Court need not address Count I including the parties' arguments regarding Petitioner's TPS status.

2026) (citing cases). "Since *Thuraissigiam* did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, the Court finds that *Thuraissigiam* does not foreclose Petitioner's due process claim." *Id.* (citation and quotation marks omitted) (cleaned up). The Court agrees with this case law.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Due process is flexible . . . [and] calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez*, 583 U.S. 281, 312-315 (2018). To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. at 335. Courts must consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

The first *Mathews* factor weighs in favor of Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"). Petitioner has resided in the United States since October 2022, nearly four years. Petitioner has a substantial liberty interest in her freedom from detention.

The second *Mathews* factor, the risk of erroneous deprivation, also weighs in favor of Petitioner. Respondents do not argue that Petitioner presents a danger to the community or is a flight right. As a result, the Court agrees with Petitioner that "the Government seeks to detain [her] indefinitely, without any opportunity for review[.]" (Doc. #1, p. 12.) Petitioner has not yet had an opportunity to challenge the basis of her confinement. "Without an individualized hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained. An individualized assessment before an immigration judge substantially reduces this risk." *Alfonzo-Mujica v. Thompson*, Case No. SA-26-CA-00457-XR, 2026 WL 752625, at *13 (W.D. Tex. Mar. 13, 2026). Consequently, the Court finds that the second factor weighs in favor of Petitioner.

Under the third *Mathews* factor, even a weighty private interest must be balanced against the government's interest. Respondents have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. But those interests do not control under the facts presented here. The record does not show that Petitioner is a flight risk, has a significant criminal history, and/or is a danger to the community. The Court finds that the third factor weighs in favor of Petitioner.

The Court finds that the proper remedy for the violation of Petitioner's due process rights is immediate release from custody. Given the weight of the liberty interests at stake and the fact that Petitioner has already been detained for nearly six weeks, the Court concludes that immediate release is appropriate. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025) (ordering immediate release from custody after determining that the petitioner's continued detention violated procedural due process).

4

Based on the above, and on the full record before the Court, **IT IS HEREBY ORDERED**

**THAT:**

1. Petitioner's Verified Petition for a Writ of Habeas Corpus (Doc. #1) is **GRANTED**.

2. Petitioner's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction (Doc. # 2) is **GRANTED** to the extent it requests Petitioner's immediate release.

3. Respondents shall immediately release Petitioner in Missouri, but no later than 48 hours from the date of this Order.

4. Prior to Petitioner's release, Respondents must first notify Petitioner's legal counsel within two hours of her impending release and include the location of her release and approximate release time.

5. When Petitioner is released, Respondents must return to her any property, personal effects, and documents that they have taken from her, including identity documents, foreign issued identity documents, and immigration documents.

6. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release.

7. Respondents shall confirm Petitioner's release with the Court within 72 hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: <u>May 22, 2026</u>                           <u>*s/Stephen R. Bough*</u>
                                                                    Stephen R. Bough
                                                                    United States District Judge